UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RYAN OSBORNE,

                 Plaintiff,

v.

ANDREW LEGALLY et al.,

                 Defendants.

_____/

Case No. 1:25-cv-561

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed *in forma pauperis* in a prior order. (ECF No. 6.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. **First**, applying this standard regarding joinder, the Court will drop as misjoined Defendants Daron, Porter, Mackey, Hall, Bromely,[2] Goodspeed, McShane, and Johnson. The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice.

**Second**, as to remaining Defendants Defendants Legally, Cracraft, and Baker, under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint as detailed below.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis*., 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

[2] Plaintiff refers to Defendant Bromely as "Bromely" and "Bromley." In this opinion, the Court refers to this Defendant as "Bromely," which is the spelling that Plaintiff used in the case caption of the complaint. (Compl., ECF No. 1, PageID.1.)

**Discussion**

**I.      Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Jackson County, Michigan. The events about which he complains occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Plaintiff sues the following ECF staff in their individual capacities: Corrections Officer Andrew **Legally**, Corrections Officer Unknown **Cracraft**, Corrections Officer Unknown **Daron**, Sergeant Daniel **Porter**, Lieutenant Adam **Baker**, Lieutenant Unknown **Mackey**, Lieutenant Travis **Hall**, Captain Kevin **Bromely**, Hearings Investigator Robin **Goodspeed**, Assistant Resident Unit Supervisor Matthew **McShane**, and Sergeant Richard **Johnson**. (Compl., ECF No. 1, PageID.1, 3–4.)

In Plaintiff's complaint, he alleges that on September 15, 2023, "while walking to early chow," non-party Officer Miston stopped Plaintiff and "physically searched" Plaintiff.[3] (*Id.*, PageID.4.) Then, "while returning from early chow not 10 minutes later from the first event," Plaintiff "was approached by Defendant Legally." (*Id.*, PageID.4–5.) Plaintiff claims that Defendant Legally "attempt[ed] to groom Plaintiff through striking a[n] inappropriate conversation about the apples between Plaintiff's legs." (*Id.*, PageID.5.) In response, Plaintiff "informed Defendant Legally that his comments w[ere] 'a [Prison Rape Elimination Act (PREA)] and not to joke with [Plaintiff] like that as he doesn't play the slip game.'" (*Id.*) Plaintiff states that the "slip game" is "inappropriate comments meant as a means to degrade and humiliate someone." (*Id.*) Defendant Legally responded: "You play whatever game I want you to play." (*Id.*) "Plaintiff left and went to class." (*Id.*)

---

[3] In this opinion, the Court corrects the capitalization in quotations from Plaintiff's complaint.

While Plaintiff was in class, Defendant Legally went into Plaintiff's cell, and when Plaintiff returned from class, "he caught Defendant Legally reading [Plaintiff's] legal mail." (*Id.*) Plaintiff claims that Defendant Legally "bec[ame] enraged after he read the pending lawsuits Plaintiff had pending." (*Id.*) Defendant Legally then stated: "You like filing lawsuits don't ya?" (*Id.*) Thereafter, Defendant Legally ordered Plaintiff to go to the dayroom. (*Id.*) Defendant Legally and two non-party correctional officers continued to search Plaintiff's cell, and Plaintiff claims that they "tore [his] cell ripping up legal mail and personal property." (*Id.*) When Plaintiff returned to his cell, Defendant Legally "gave Plaintiff a direct order to 'take your pants off, let's see those apples.'" (*Id.*) "Plaintiff refused and was told by Defendant Legally to 'step out and cuff up, you gonna show me those apples.'" (*Id.*)

Then, "Defendant Legally took Plaintiff to segregation, stating, 'You like to file lawsuits and you like to do legal work for other people. I'll be sure to put an end to that.'" (*Id.*) At some point after this, "Plaintiff filed a grievance but because it mentioned sexual abuse it was processed as a PREA [complaint]." (*Id.*)

After Plaintiff arrived in segregation, he "was placed in a shower and strip[] searched by Defendant Cracraft." (*Id.*, PageID.5–6.) While conducting the search, Defendant Cracraft "spoke briefly to Defendant Legally," who told Cracraft "to 'make sure he stays here.'" (*Id.*, PageID.6.) "Defendant Cracraft left Plaintiff in a shower that was covered in filth namely, slim, and other disgusting materials." (*Id.*) Defendant Cracraft then returned "and gave Plaintiff a specimen urine cup." (*Id.*) Plaintiff told Defendant Cracraft that Plaintiff "need[ed] to go into a dry cell to drink from a fountain and not a dirty shower head which is not a drinking fountain." (*Id.*) Defendant Cracraft responded: "What do you work for the Health Dept, you'll drink from any where I tell

you to. F[***] you and your dry cell you shouldn't have f[*****] with Legally you got nothing coming." (*Id.* (asterisks added).)

On September 15, 2023, Defendant Baker conducted a hearing for four minor misconduct charges against Plaintiff that had been written by Defendant Legally, and one minor misconduct charge that had been written by Defendant Cracraft. (*Id.*) At the hearing, Plaintiff told Defendant Baker that the hearing was not being "conducted in[] a timely fashion and that this violated Plaintiff[']s procedural due process." (*Id.*) Defendant Baker stated: "I don't give a f[***] about due process or any right you think you have. This is my house if you don't f[***] with my officers you wouldn't be in this mess. Plead guilty and get 5 days or not guilty 15 days." (*Id.*) "Plaintiff elected to plead not guilty because he was not guilty." (*Id.*) Plaintiff claims that Defendant Baker retaliated against Plaintiff when "Defendant Baker found Plaintiff guilty of all misconducts." (*Id.*)

On October 4, 2023, Defendant Legally came to Plaintiff's cell and called Plaintiff "a 'f[***]ing f[*****].'" (*Id.* (asterisks added).)

On October 5, 2023, Defendant Baker conducted another misconduct hearing for unspecified class II misconduct charges that Plaintiff had received. (*Id.*, PageID.7.) Plaintiff alleges that at the hearing, he "attempted to present evidence," "but was prevented by Defendant Baker," who stated: "I don't give a f[***] about anything you have to say or any evidence you may have I'm going to find you guilty but let's hear it." (*Id.*)

On October 15, 2023, Defendant Legally came to Plaintiff's cell "while Plaintiff was using the restroom." (*Id.*) "Defendant Legally opened the flap to Plaintiff[']s cell door to look into the cell and ordered Plaintiff to 'stand up and let him see it[,]' referring to Plaintiff[']s penis which Plaintiff complied with out of fear of further reprisal." (*Id.*)

6

Plaintiff then details various interactions with Defendants Daron, Porter, Mackey, Hall, Bromely, Goodspeed, McShane, and Johnson, which are wholly unconnected to the events set forth above. (*See id.*, PageID.7–9.)[4]

As relief, Plaintiff seeks compensatory and punitive damages. (*Id.*, PageID.11.)

## II.    Misjoinder

### A.    Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

---

[4] In the interest of judicial efficiency, in this opinion, the Court does not set these factual allegations because, as explained below, the Court concludes that Defendants Daron, Porter, Baker, Mackey, Hall, Bromely, Goodspeed, McShane, and Johnson are misjoined to this action.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Defendant Legally is the first listed Defendant in the case caption and the first Defendant named in the factual allegations in the complaint. (Compl., ECF No. 1, PageID.1, 5.) Plaintiff alleges that on several occasions, Defendant Legally make sexually inappropriate comments to Plaintiff and engaged in several acts of retaliation, including searching Plaintiff's cell, sending Plaintiff to segregation, and issuing Plaintiff misconduct charges. (*See generally id.*) As to Defendants Cracraft and Baker, Plaintiff alleges that Plaintiff interacted with Defendant Cracraft when Defendant Legally took Plaintiff to segregation and that Defendant Baker served as the hearing officer for the hearing regarding the misconduct charges that Defendant Legally had issued to Plaintiff. (*See id.*, PageID.5–6.) Plaintiff then details other interactions with Defendants Daron, Porter, Mackey, Hall, Bromely, Goodspeed, McShane, and Johnson, which are wholly unconnected to the above-described interactions with Defendants Legally, Cracraft, and Baker. (*See id.*, PageID.7–9.)

It appears that Plaintiff believes that all of the events set forth in the complaint are related because they occurred during his incarceration at ECF and because he subjectively views all of the

9

events as part of a vast retaliatory conspiracy against him. However, Plaintiff's subjective belief and interpretation of events does not transform separate events into events that arise out of the same transaction or occurrence. Under these circumstances, the Court concludes that Plaintiff has properly joined Defendants Legally, Cracraft, and Baker because Plaintiff's claims against these Defendants arise out of the same transactions and occurrences. However, the Court concludes that Plaintiff has improperly joined Defendants Daron, Porter, Mackey, Hall, Bromely, Goodspeed, McShane, and Johnson to this action.

### B.    Remedy

Because the Court has concluded that Plaintiff has improperly joined Defendants Daron, Porter, Mackey, Hall, Bromely, Goodspeed, McShane, and Johnson to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

10

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Here, Plaintiff's complaint involves events that occurred starting in fall of 2023. (*See generally* Compl., ECF No. 1.) Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against Defendants Daron, Porter, Mackey, Hall, Bromely, Goodspeed, McShane, and Johnson, and Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if his claims against these Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Daron, Porter, Mackey, Hall, Bromely, Goodspeed, McShane, and Johnson because they are misjoined. The Court will dismiss Plaintiff's claims against these Defendants without prejudice.[5]

---

[5] Plaintiff is advised that any new civil actions in this Court must be filed on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and at the time of filing his complaint, Plaintiff must pay the required filing fees or apply in the manner required by law to proceed *in forma pauperis*. As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

11

### III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

12

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## IV.    Discussion

As to remaining Defendants Legally, Cracraft, and Baker, Plaintiff raises First Amendment retaliation claims against all three Defendants, Eighth Amendment sexual harassment claims against Defendant Legally, and Fourteenth Amendment due process and equal protection claims against all three Defendants. (Compl., ECF No. 1, PageID.9–10.)

### A.    First Amendment Retaliation Claims

Plaintiff alleges that Defendants Legally, Cracraft, and Baker retaliated against him in violation of the First Amendment by searching Plaintiff's cell, sending Plaintiff to segregation, and issuing Plaintiff misconduct charges/presiding over Plaintiff's class II misconduct hearings. (Compl., ECF No. 1, PageID.10.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

At this stage of the proceedings, the Court must take Plaintiff's allegations as true and in the light most favorable to Plaintiff. Under these circumstances, although Plaintiff has by no means

proven his First Amendment retaliation claims, the Court will not dismiss Plaintiff's retaliation claims against Defendants Legally, Cracraft, and Baker at this time.

### B.    Eighth Amendment Claims

Plaintiff alleges that Defendant Legally violated his Eighth Amendment rights by sexually harassing Plaintiff. (Compl., ECF No. 1, PageID.10.)

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However, in the context of claims against prison officials, the Sixth Circuit has repeatedly held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not necessarily rise to constitutional dimensions. *See, e.g.*, *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (concluding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (finding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim).

Further, some courts, including the Sixth Circuit, have held that minor, isolated incidents of sexual touching coupled with offensive sexual remarks also do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's

14

buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (finding that, where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault).

In contrast, repeated and extreme incidents may sufficiently state a claim. For example, the Sixth Circuit found an Eighth Amendment violation when a male prison official sexually harassed a female prisoner by demanding on multiple occasions that the prisoner expose herself and masturbate while the official watched and intimidated her into complying. *Rafferty*, 915 F.3d at 1095–96. The *Rafferty* court noted that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse. *Id.* at 1096.

*Rafferty* is distinguishable from the majority of Plaintiff's claims against Defendant Legally. Specifically, Plaintiff alleges that on multiple occasions, Defendant Legally made sexual comments to Plaintiff. None of these occasions of sexual comments are sufficient to state a claim. However, after making these various prior sexual comments, on October 15, 2023, Defendant Legally came to Plaintiff's cell while Plaintiff was using the restroom, asked to see Plaintiff's private area, and Plaintiff complied. (Compl., ECF No. 1, PageID.7.) Although Plaintiff has by no means proven his Eighth Amendment claim against Defendant Legally regarding this October 15, 2023, interaction, at this early stage of the proceedings, the Court will not dismiss this claim. All of Plaintiff's other Eighth Amendment claims against Defendant Legally will be dismissed.

15

### C.    Fourteenth Amendment Due Process Clause Claims

### 1.    Misconduct Tickets

Plaintiff alleges that Defendants violated his Fourteenth Amendment due process rights as related to the issuance of class II misconduct tickets to Plaintiff and to the hearings held for these misconduct tickets. (*See* Compl., ECF No. 1, PageID.10.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To state a Fourteenth Amendment procedural due process claim, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, the United States Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his [or her] sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation for thirty days did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a

16

protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Here, Plaintiff states that he received several class II misconduct charges. Although not always specifically articulated by Plaintiff, it appears that he was found guilty of many of these misconduct charges.

To state a Fourteenth Amendment procedural due process claim, Plaintiff must show that the sanctions he received as a result of the misconduct conviction "inevitably affect[ed] the duration of [Plaintiff's] sentence" or imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87. However, the sanctions available in the MDOC disciplinary scheme do not affect the duration of an inmate's sentence, and placement in segregation or non-bond status for a limited period of time or the receipt of the loss of privileges sanction do not constitute "atypical and significant hardship[s]," as contemplated by *Sandin*. *See, e.g.*, *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007) (discussing that the loss of disciplinary credits under the MDOC's disciplinary scheme does not affect the duration of a prisoner's sentence); *Sandin*, 515 U.S. at 484 (holding that placement in segregation for 30 days does not impose an atypical and significant hardship); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant); *cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))); *Argue v. Hofmeyer*, 80

17

F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs).[6]

Accordingly, for the reasons set forth above, Plaintiff fails to state any Fourteenth Amendment procedural due process claims against Defendants regarding his various misconduct charges and the hearings held for these misconduct charges.

### 2.    Deprivation of Personal Property

Plaintiff alleges that Defendants violated his due process rights by "confiscating and forcing destruction of [Plaintiff's] property." (Compl., ECF No. 1, PageID.10.) However, as explained below, Plaintiff's due process claim regarding the deprivation of Plaintiff's property is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an

---

[6] If Plaintiff had been found not guilty of any of the misconduct charges, then he would not have received any sanctions for a misconduct conviction. Under these circumstances, Plaintiff would necessarily fail to show that he received any sanctions for these misconduct charges that impacted the duration of his sentence or constituted an "atypical and significant hardship." *Sandin*, 515 U.S. at 486–87. Moreover, even if Plaintiff had alleged the loss of a protected liberty interest, he would not state a due process claim because he fails to show that he did not receive all the process due to him. *See generally Wolff v. McDonnell*, 418 U.S. 539 (1974) (setting forth the minimum process required for prison disciplinary proceedings that implicate a liberty interest). Due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. That is, the right to due process protects Plaintiff's ability to *respond* to spurious charges. It does not include the right to *prevent* or *prevail* on such charges. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

Accordingly, Plaintiff fails to state a Fourteenth Amendment procedural due process claim regarding the deprivation of his property.

### D.    Fourteenth Amendment Equal Protection Clause Claims

Plaintiff alleges that Defendants "discriminated [against him] on the basis of perceived sexuality." (Compl., ECF No. 1, PageID.10.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, although Plaintiff uses the word "discriminated" when setting forth his claims, Plaintiff fails to allege any *facts* to support his conclusory assertions. Indeed, Plaintiff fails to allege any facts to suggest that he was treated differently than others who were similarly situated. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory, and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Accordingly, any intended Fourteenth Amendment equal protection claims will be dismissed.

#### Conclusion

For the foregoing reasons, the Court will drop Defendants Daron, Porter, Mackey, Hall, Bromely, Goodspeed, McShane, and Johnson as misjoined pursuant to Rule 21 of the Federal Rules of Civil Procedure. The Court will dismiss Plaintiff's claims against these Defendants without prejudice. Further, having conducted the review required by the PLRA, the Court determines that the following claims against remaining Defendants Legally, Cracraft, and Baker will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c): (i) all of Plaintiff's Eighth Amendment sexual harassment claims *except* for

Plaintiff's claim regarding his October 15, 2023, interaction with Defendant Legally, (ii) Fourteenth Amendment due process claims, and (iii) Fourteenth Amendment equal protection claims. Plaintiff's First Amendment retaliation claims against Defendants Legally, Cracraft, and Baker remain in the case, and Plaintiff's Eighth Amendment claim against Defendant Legally regarding their October 15, 2023, interaction remains in the case.

An order consistent with this opinion will be entered.

Dated:    March 23, 2026                                    /s/ *Maarten Vermaat*

                                                            Maarten Vermaat
                                                            United States Magistrate Judge